IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF DAVID B. CONROY, BY AND THROUGH ITS ADMINISTRATOR AD PROSEQUENDUM, JENNEY FERGUSON,<br><br>      Plaintiff,<br><br>  v.<br><br>CUMBERLAND COUNTY, et al.<br><br>      Defendants. | HONORABLE ROBERT B. KUGLER<br><br>Civil Action<br>No. 17-7183 (RBK-AMD)<br><br>**OPINION** |

APPEARANCES:

Shanna McCann, Esq.
CHANCE & MCCANN, LLP
201 W. Commerce St.
Bridgeton, NJ 08302
    Attorneys for Defendants Cumberland County and Warden
    Richard T. Smith

Conrad J. Benedetto, Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
10,000 Lincoln Drive East, Suite 201
Marlton, NJ 08053
    Attorneys for Plaintiffs

**KUGLER, District Judge:**

**I. INTRODUCTION**

    This matter arises out of the unfortunate suicide of David Conroy while he was detained at the Cumberland County Jail. His sister and administrator of his estate, Jenney Ferguson, filed this lawsuit against defendants Cumberland County, Cumberland County Jail warden Richard Smith, former Cumberland County Jail

warden Robert Balicki,[1] CFG Health Systems, and John Doe defendants for violations of Mr. Conroy's constitutional rights, negligence, and violations of the New Jersey Civil Rights Act, N.J. STAT. ANN. § 10:6-1 et seq. ("NJCRA").

Defendants Cumberland County and Warden Richard Smith now move for partial summary judgment on Plaintiffs' state tort claims. [Docket Entry 95]. Plaintiffs oppose the motion. [Docket Entry 98]. The principal issue to be decided is whether the state tort claims for wrongful death and negligence must be dismissed due to Plaintiffs' failure to file a notice of tort claim or whether an exception to the New Jersey Tort Claims Act ("TCA"), N.J.S.A. § 59:1-1 et seq., applies. For the reasons stated herein, the Court finds that that Plaintiffs have not substantially complied with the TCA. The summary judgment motion is therefore granted.

## II. BACKGROUND

### A. Procedural History

Plaintiffs filed their complaint raising claims under state and federal law on September 19, 2017. [Docket Entry 1]. Former Warden Balicki filed a motion to dismiss on September 28, 2017. [Docket Entry 5]. On February 20, 2018, CFG Health filed a motion for summary judgment on Plaintiff's medical

---

[1] Former Warden Balicki has since been dismissed from the case. [Docket Entry 43].

2

malpractice/professional negligence claims against CFG Health. [Docket Entry 25].

The Court granted Balicki's motion to dismiss on May 31, 2018. [Docket Entry 43]. Plaintiff was permitted to file an amended complaint with their claims against Balicki, but they declined to do so even after the Court granted an extension of time to file the amended complaint. [Docket Entry 50]. As such, Balicki is now dismissed with prejudice from the case.

CFG's motion for summary judgment was denied in September 2018. [Docket Entry 63]. The Court also denied CFG Health's motion for reconsideration. [Docket Entry 90]. While CFG Health's motion was pending, Cumberland County and Warden Smith filed a motion for partial summary judgment on Plaintiffs' state tort claims. [Docket Entry 60]. The Court dismissed the motion without prejudice based on a failure to comply with Rule 56.1. [Docket Entry 93]. Defendants subsequently refiled the instant motion. [Docket Entry 95]. Plaintiffs submitted their opposition, [Docket Entry 98], and Defendants declined to file reply papers.

The matter is now ripe for disposition without oral argument.

**B. Allegations in Pleadings**

According to the complaint, Mr. Conroy died by suicide on May 29, 2017 after being detained in the Cumberland County Jail.

[Docket Entry 1 ¶ 19]. Plaintiffs allege unidentified corrections officers and representatives of CFG Health failed to properly screen Mr. Conroy "for any suicidal tendencies or any other psychological and/or emotional problems" and did not properly monitor him while he was confined in the jail. [*Id.* ¶¶ 16-20]. The complaint further alleges Warden Smith "was aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference on the part of the Corrections Officers and Command Staff under his control and supervision at the Cumberland County Jail" which included "the failure to properly screen inmates for suicidal tendencies, and/or other psychological or emotional problems, failure to adequately monitor and watch inmates, and failure to protect inmates from injury, harm, or death." [*Id.* ¶ 37].

**C. Defendants' Statement of Material Facts**

Defendants move for summary judgment only on the state tort claims: wrongful death (Count V); survival action (Count VI); and negligence (Count VII). [Defendants' Statement of Material Facts ("DSOF"), Docket Entry 95-2 ¶ 2]. Defendants assert Plaintiffs failed to file the notice of tort claim that is required by the TCA. [*Id.* ¶ 3]. Emails from Mae Patterson, assistant to County Counsel for the County of Cumberland, and

4

Warden Smith's assistant indicate that they did not receive tort claims notices regarding Mr. Conroy's death. [*Id.* ¶ 5].

**D. Plaintiff's Statement of Material Facts**

Plaintiffs admit the complaint raises three state tort claims against Cumberland County and Warden Smith. [Plaintiffs' Response to Defendants' Statement of Material Facts ("PSOF") Docket Entry 98-1 ¶ 2]. They assert that "while Plaintiffs' [sic] did not file a 'formal' Tort Claims Notice, Plaintiffs did substantially comply with the notice requirement of the Tort Claims Act through the letters they sent to Cumberland County on June 1, 2017 and June 28, 2017." [*Id.* ¶ 3]. They admit they did not request permission to file a late Tort Claims Notice, stating "Plaintiffs did not feel they needed to petition the Court to permit them to serve a 'formal' Tort Claim notice as they had already substantially complied with the notice requirements." [*Id.* ¶ 4]. They neither admit nor deny the final allegation, stating the email from Ms. Patterson speaks for itself. [*Id.* ¶ 5].

**III. STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most

favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"To defeat a motion for summary judgment, the nonmoving party must show that there is more than merely 'a scintilla of evidence' supporting his position, or 'some metaphysical doubt as to the material facts." *Transamerica Occidental Life Ins. Co. v. Total Sys. Inc.*, 513 F. App'x 246, 249 (3d Cir. 2013) (quoting *Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 252).

**IV. DISCUSSION**

Defendants' summary judgment motion is limited to Plaintiff's wrongful death, survival action, and negligence

claims based on Plaintiff's alleged non-compliance with the TCA. [DSOF ¶¶ 2-3]. They argue that the TCA requires dismissal of the tort claims because Plaintiffs failed to file notices of tort claims on Cumberland County and Warden Smith within the requisite period of time and no tolling provisions apply to Plaintiffs' claims. [Docket Entry 95-1 at 6-8]. However, Plaintiffs do not argue that any tolling provisions apply.

Plaintiffs concede that they did not file a "formal" notice of tort claim with Cumberland County or Warden Smith and invoke the substantial compliance exception based on their letters to the Cumberland County jail and record custodian. (PSOF ¶¶ 3-4). Therefore, the Court must resolve whether Plaintiffs substantially complied with the TCA. If they did not, Defendants are entitled to judgment as a matter of law.

"The TCA indisputably governs causes of action in tort against governmental agencies within New Jersey." *Gomes v. Cty. of Monmouth*, 134 A.3d 33, 37 (N.J. Super. Ct. App. Div. 2016). "A claimant may not bring an action against a public entity under the TCA unless there is compliance with its notice requirements of the TCA." *Alberts v. Gaeckler*, 144 A.3d 80, 85 (N.J. Super. Ct. Law Div. 2014). "This notice must be filed 'within 90 days of accrual of the claim,' . . . . If the claimant fails to do so, the statute dictates that he or she 'shall be forever barred from recovering against a public entity

7

or public employee[.]'" *Gomes*, 134 A.3d at 38 (quoting N.J.S.A. 59:8-8) (alteration in original). However, the state courts have recognized an equitable exception to the notice provision: substantial compliance.

As applied to the TCA, the substantial compliance exception to the notice requirement "has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 61 A.3d 906, 923 (N.J. 2013). In other words, "'substantial compliance means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required.'" *Lebron v. Sanchez*, 970 A.2d 399, 405–06 (N.J. Super. Ct. App. Div. 2009) (quoting *Lameiro v. W. N.Y. Bd. of Educ.*, 347 A.2d 377, 379 (N.J. Super. Ct. Law Div. 1975)). "Notification requirements have been recognized as serving two purposes: (1) to allow at least six months for administrative review so as to permit settlement of meritorious claims, and (2) to provide prompt notice in order to permit adequate investigation and proper defense." *Lameiro*, 347 A.2d at 379. In order to invoke the equitable doctrine of substantial compliance, a plaintiff must show: "(1) the lack of prejudice to the defending party; (2) a

series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute." *Lebron*, 970 A.2d at 406.

Plaintiffs present four documents in support of their argument: a letter from Plaintiffs' attorney Conrad Benedetto's litigation paralegal Bonnie Rakoczy addressed to Warden Smith; a letter from Ms. Rakoczy to Sgt. Holbrook; a letter from Ms. Rokoczy to Captain Palau; and an Open Public Records Act ("OPRA") request from Mr. Benedetto directed to the Cumberland County Custodian of Records. [Docket Entries 98-2 & 98-3].

The three letters from Ms. Rakoczy are substantially identical. They are all dated June 1, 2017, three days after Mr. Conroy's death, bear the subject line "Re: David Conroy, Deceased," and indicate that Mr. Benedetto has been retained to represent Mr. Conroy's family. [Docket Entry 98-2]. Ms. Rakoczy writes that Mr. Conroy's mother would be arriving at the Cumberland County Jail on June 2, 2017 with Ms. Ferguson and Mr. Benedetto to pick up Mr. Conroy's personal belongings. [*Id.*]. The letters request that the addressees advise if Mr. Conroy's mother needs to bring anything aside from her photo identification in order to enter the jail or if the date does not work for Captain Palau. [*Id.*].

None of these letters contain the minimum amount of information required to be in a TCA claim form:

> A claim shall be presented by the claimant or by a person acting on his behalf and shall include:
>
> a.  The name and post office address of the claimant;
>
> b.  The post-office address to which the person presenting the claim desires notices to be sent;
>
> c.  The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
> d.  A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
> e.  The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
>
> f.  The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J.S.A. § 59:8-4. The letters do not set forth "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" or "[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." *Id*.

The letters' purpose was to arrange a visit to Cumberland County Jail so Mr. Conroy's family could pick up his personal belongings, not alert the recipients that the family was

asserting a claim against the warden or officers based on Mr. Conroy's death. *See Lameiro*, 347 A.2d at 379 (holding notice of plaintiff failed to substantially comply with the notice requirement when plaintiff's counsel merely sent a letter to the principal of his child's school asking for the name of student who pushed plaintiff's child). "The substantial compliance doctrine does not save a notice, like this one, that does not come close to meeting the statute's requirements or fulfilling its underlying goals. The doctrine will not, for example, 'cure the total omission of an essential element from a claim.'" *Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, at *8 (D.N.J. Jan. 18, 2019) (quoting *Navarro v. Rodriguez*, 495 A.2d 476, 482 (N.J. Super. Ct. Law Div. 1984)). Accordingly, the letters do not substantially comply with the notice provisions of the TCA.

The OPRA notice served on Cumberland County's record custodian presents a closer case than the letters from Ms. Rakoczy. [Docket Entry 98-3]. It contains Mr. Benedetto's name and address, references Mr. Conroy's date of death, requests information about Warden Smith and officers, and requests training manuals "dealing directly with inmate in custody deaths" and "with inmate and their Psychiatric or mental health illness in custody deaths." [*Id.* at ¶¶ Q-R]. The request form presents much of the information required by the TCA, but the

purpose of the OPRA request form was to have the records custodian produce certain documents, not to put Cumberland County on notice that a lawsuit about Mr. Conroy's death was impending. Notably, the letter was not addressed to the county counsel. The only possible legal action mentioned in the OPRA notice is an appeal of any determination by the records custodian that the information requested by Mr. Benedetto was not public. [*Id.* at 3]. *See also Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 294–95 (D.N.J. 2012) (holding probable cause statement filed with municipal court did not substantially comply with TCA for monetary damages based on alleged use of excessive force by officer).

Plaintiffs' arguments in support of substantial compliance are unavailing. One of the main purposes behind the notice requirement is to give the public entity "six months for the administrative review with the opportunity to settle meritorious claims prior to the bringing of suit . . . ." *Beauchamp v. Amedio*, 751 A.2d 1047, 1052 (N.J. 2000) (internal quotation marks omitted). Plaintiffs filed their lawsuit less than three months after serving the OPRA request, defeating the purpose of the TCA notice provision. [*Compare* Docket Entry 1, *with* Docket Entry 98-3]. Moreover, it is irrelevant for purposes of the TCA that there were other lawsuits pending involving different deaths in the Cumberland County Jail at the time of Mr. Conroy's

death. Every incident is different and requires separate notice under the TCA. *See Pilonero v. Twp. of Old Bridge*, 566 A.2d 546, 549 (App. Div. 1989) (requiring separate claim notices when there are "two entirely separate claims by different parties with different injuries and damages are involved"). It is likewise irrelevant for purposes of the TCA that the County may have conducted its own investigation about the in-custody deaths. *See Sinclair v. Dunagan*, 905 F. Supp. 208, 213 (D.N.J. 1995) (noting that claim notice still required even when public entity had prior knowledge of incident). "A municipality is not required to divine when it may be sued. It must be told so clearly and in detail." *Id.* Because the OPRA notice does not inform the county records custodian that a lawsuit based on the circumstances surrounding Mr. Conroy's death was forthcoming, the notice does not substantially comply with the TCA. *Pilonero*, 566 A.2d at 549 ("[W]e cannot agree that notice which does not advise of the claim for plaintiff's injuries constitutes substantial compliance.").

    The Court is mindful of the state and federal courts' preference for resolving cases on their merits instead of on procedural grounds. But case law applied to the facts of this case constrain the Court to conclude that Plaintiffs have failed to substantially comply with the TCA. Plaintiffs ask the Court to treat routine letters of representation and OPRA requests as

equivalent to notifying a public entity it may be sued. Were the Court to determine that these documents "gave public entities sufficient notice of tort claims, the [TCA] procedures would be rendered largely superfluous." *Ingram*, 911 F. Supp. at 296. Therefore, New Jersey law requires this Court to dismiss the tort claims with prejudice.

As on previous occasions, *see Estate of Hennis v. Balicki*, No. 16-3858, 2018 WL 1558142, at *14–17 (D.N.J. Mar. 29, 2018), the record before the Court makes plain that there was no reason for the failure to comply with the TCA other than Mr. Benedetto's negligence, if not malpractice. "Cases which have excused strict statutory compliance generally involve claimants who have been diligent in their efforts at compliance." *Id*. at 212. Mr. Benedetto has made no showing of diligence, nor has he shown "'a series of steps taken to comply with the statute'" or a "'reasonable explanation why there was not strict compliance with the statute.'" *Lebron v. Sanchez*, 970 A.2d 399, 406 (N.J. Super. Ct. App. Div. 2009) (quoting *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 783 (N.J. 2003)).

Mr. Benedetto did not submit a technically deficient claim form; instead, he candidly admits no "notice" was provided other than the letters and OPRA request. [PSOF ¶¶ 3-4]. His assertion that he did not believe "formal" notice was required because he "substantially complied" with the statute is nonsensical.

"Substantial compliance" is not an alternative method of fulfilling the requirements of the TCA; it is an equitable remedy for plaintiffs that made every effort to comply with the statute but were technically deficient in some aspect. *Ferreira*, 836 A.2d at 783. As Mr. Benedetto mentions often in his brief, Mr. Conroy's death is not the first at Cumberland County Jail, and this is not the first lawsuit Mr. Benedetto has litigated regarding those deaths. Mr. Benedetto was well aware of the requirement to file a notice of tort claim given that one of the items requested in the OPRA request were copies of "any Tort Claims Notices, insurance claims or complaints wherein a in custody death is referenced for the years 2010 to present." [*Id.* at ¶ P]. The fact that Mr. Benedetto knew to ask for copies of prior tort notices further indicates he knew one had to be filed to comply with the TCA.

Mr. Conroy passed away on May 29, 2017 and Mr. Benedetto's firm wrote to the jail three days later. He was retained as counsel with plenty of time to file a tort claims notice with Cumberland County. The statute also gives plaintiffs a year to file a motion in the state courts to request additional time to file a claims notice in the event extraordinary circumstances prevented the timely filing of a notice of claim. N.J.S.A. § 59:8-9. Mr. Benedetto admits he "did not feel" he needed to petition for this additional time. [PSOF ¶ 4]. Mr. Benedetto was

15

mistaken, and his inaction has cost Plaintiffs their state tort claims.

## V. CONCLUSION

For the reasons stated above, the motion for summary judgment is granted. The state law tort claims are dismissed with prejudice. An appropriate order follows.

| | |
|---|---|
| **August 8, 2019** | **s/ Robert B. Kugler** |
| Date | ROBERT B. KUGLER |
| | U.S. District Judge |