# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| The Estate of David B. Conroy, by and through its Administrator Ad Prosequendum, Jenney Ferguson,<br><br>      Plaintiffs,<br><br>  v.<br><br>Cumberland County, Warden Richard T. Smith, in his individual capacity, Former Warden Robert Balicki, in his individual capacity, John Doe Corrections Officers (1-10), fictitious individuals, in their individual capacities and CFG Health Systems, LLC,<br><br>      Defendants. | Civil Action<br><br>No: 1:17-cv-7183 (RBK/AMD) |

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS, CUMBERLAND COUNTY AND WARDEN RICHARD T. SMITH'S MOTION FOR SUMMARY JUDGMENT

Law Offices of Conrad J. Benedetto, Esquire
1615 South Broad Street
Philadelphia, PA  19148
Attorney for Plaintiffs

1

# **TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| TABLE OF AUTHORITIES ……………………………………………………… | | | 3 |
| PRELIMINARY STATEMENT …………………………………………………... | | | 4 |
| LEGAL ARGUMENT ……………………………………………………………….. | | | 6 |
| I. | PLAINTIFFS FEDERAL CLAIMS SHOULD NOT BE DISMISSED ……... | | 6 |
| | A. | Plaintiffs' Claims against Cumberland County Under 42 U.S.C. §1983 Should Not be dismissed ……………………. | 6 |
| | B. | Plaintiffs' Claims against Warden Richard Smith Under 42 U.S.C. §1983 Should Not be dismissed ……………………. | 14 |
| | C. | Plaintiffs' Federal Claims Should Not be Dismissed Based Upon Qualified Immunity …………………………………… | 15 |
| II. | PLAINTIFFS' NJCRA CLAIMS SHOULD NOT BE DISMISSED ………… | | 16 |
| III. | CLAIMS AGAINST UNKNOWN CORRECTIONS OFFICERS …………… | | 16 |
| CONCLUSION ……………………………………………………………………… | | | 16 |

## TABLE OF AUTHORITIES

**CASES**

Bennett v. City of Slidell, 728 F.2d 762 (5th Cir.1984) …………………………………. 7, 10

Berry v. McLemore, 670 F.2d 30 (5th Cir.1982) ………………………………………….. 7

Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999), aff'd 335 Fed. Appx. 3b (3d Cir. 2002) …………………………………………………………………………… 7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) …………………………………….…… 6

City of Canton v. Harris, 489 U.S. 378 (1989) …………………………………………… 15

Davis v. Portlines Transportes Maritime International, 16 F.3d. 532 (3d Cir. 1994) …….. 6

Estate of Allen v. Cumberland County, No. CV 15-6273 (JBS-AMD) ………………..... 8

Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994) ………………………………….. 6, 9

Hunt v. Cromartie, 526 U.S. 541 (1999) …………………………………………………. 6

Languirand v. Hayden, 717 F.2d 220 (5th Cir. 1983) …………………………………….. 7

O'Quinn v. Manuel, 773 F.2d 605 (5th Cir. 1985) ……………………………………….. 7, 10

Saucier v. Katz, 533 U.S. 194 (2001) ……………………………………………………. 15

Simmons v. City of Philadelphia, 947 F.2d 1042 (3rd Cir. 1991) cert. denied, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992) ……………………………………………………. 9

Trafton v. City of Woodbury, 2011 WL 2610747 *16-17 (D. N.J. 2011) ……………….. 16

Wishkin v. Potter, 476 F.3d 180 (3d Cir. 2007) ….……………………………………… 6

**STATUTES**

42 U.S.C. § 1983 ……………………………………………………………………………6, 7, 10, 16

**RULES**

Fed. R. Civ. P. 56(a) ……………………………………………………………………… 6

**PRELIMINARY STATEMENT**

This instant matter arises from the suicide of decedent, David Conroy, on May 27, 2017, while he was incarcerated at the Cumberland County Jail (herein after CCDOC). Decedent Conroy's suicide marked the 6th successful suicide at the CCDOC in just under three (3) years. Plaintiffs' complaint alleges that the supervision Mr. Conroy received while incarcerated at the CCDOC was woefully inadequate, and in this case rose to the level of criminal. In fact, two CCDOC employees, Corrections Officers Justin Cimino and Nicholas Gomez, were indicted by the Cumberland County Prosecutor's office in connection with David Conroy's suicide as evidence showed that the "close watch" forms were falsified and reported checks of Mr. Conroy were never made.

Unfortunately, this behavior of failing to perform checks and falsifying records was a pattern and practice of conduct by corrections officers employed at the CCDOC, and the CCDOC turned a blind eye and failed to take any action to train and/or correct this pattern and practice. CCDOC Corrections Officers Melanie Loatman, Tabatha Roman, Justin Cimino, and Nicholas Gomez were all tasked with supervising and ensuring the health, welfare and wellbeing of inmates at the CCDOC; namely Alissa Allen, Megan Moore, and David Conroy. However, in each of these instances, the above-named Corrections Officers failed to supervise these inmates by failing to conduct the required cell checks and then falsifying the logbooks and/or close watch forms to indicate that the checks were performed. As a result, in each of these instances the above-named inmate was provided the opportunity and successfully committed suicide. Despite this same situation playing out again and again, the CCDOC took no steps to learn from any of the previous suicides and/or to provide additional training to its employees in order to break this pattern until

the numerous lawsuits before this court were filed; which also prompted a Department of Justice investigation into the practices of the CCDOC that is still pending.

Defendants, Cumberland County and Warden Richard Smith have now filed a Motion for Summary Judgment claiming that Plaintiffs' Federal claims should be dismissed. For the reasons that follow, Plaintiffs' respectfully submit that Defendants, Cumberland County and Warden Richard Smith's Motion for Summary Judgment should be denied.

## ANSWER TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

As required by L.Civ.R. 56.1(a), Plaintiffs' Answer to Defendant's Statement of Undisputed Material Facts has been removed from the brief and separately bound.

## LEGAL ARGUMENT

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and that the movant is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In reviewing a motion for summary judgment, the court is required to examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime International, 16 F.3d. 532, 536 n.3 (3d Cir. 1994).

In the instant matter, Plaintiffs' assert that questions of material fact remain outstanding, rendering summary judgment inappropriate.

## I. PLAINTIFFS FEDERAL CLAIMS SHOULD NOT BE DISMISSED

**A.     Plaintiffs' Claims against Cumberland County Under 42 U.S.C. §1983 Should Not be dismissed.**

The Courts have held that a municipality can be sued directly under 42 U.S.C. §1983 where action or inaction pursuant to a municipal policy or custom or practice causes the occurrence of a constitutional tort which results from the entity's policy or custom or practice. Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994). In order for a plaintiff to establish that a municipality acted with deliberate indifference, a plaintiff must show that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999), aff'd 335 Fed. Appx. 3b (3d Cir. 2002).

Moreover, "liability [under section 1983] may result if municipal officials have actual or constructive knowledge of constitutional violations and fail to carry out their duty to correct them." O'Quinn v. Manuel, 773 F.2d 605, 608-09 (5th Cir. 1985) (citing Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir.1984) (en banc)). Also, "'some courts . . . have held that a municipal policy of authorizing or encouraging police misconduct can be inferred where the municipality has been grossly negligent in the hiring, training, or disciplining of its police force.'" Languirand v. Hayden, 717 F.2d 220, 225 (5th Cir. 1983) (quoting Berry v. McLemore, 670 F.2d 30 (5th Cir.1982)).

Here, Cumberland County had actual knowledge that misconduct of its Corrections Officers was occurring out at the CCDOC. Namely that Corrections Officers were failing to conduct cell checks and further that they were falsifying logbooks/close watch form entries to reflect that said checks were in fact done. Cumberland County also had actual knowledge that

6

during multiple instances when these alleged checks were not completed, but rather falsely entered, that constitutional violations to inmates occurred. Despite this knowledge, Cumberland County chose to ignore this pattern of behavior amongst their correctional staff and did nothing about it. While Plaintiffs' argue that this pattern is present in all of the Jail suicide cases in which Plaintiffs' counsel is involved stemming from the CCDOC; there can be no argument that this pattern is present in the case of deceased inmate, Alissa Allen, Megan Moore and now David Conroy.

In the Estate of Alissa Allen, Corrections Officer Melanie Loatman failed to conduct her required cell checks for a period of 5 hours and falsified the logbook to reflect that said checks were conducted. During this five-hour period inmate Alissa Allen committed suicide. See Estate of Allen v. Cumberland County, No. CV 15-6273 (JBS-AMD). Following a disciplinary hearing conducted at the CCDOC, Corrections Officer Loatman was put on leave for a period of 20 days for her actions, but beyond that no steps were taken by Cumberland County to educate the Corrections Officers following this incident or to make an example of Melanie Loatman's actions. See Estate of Allen v. Cumberland County, No. CV 15-6273 (JBS-AMD). This lack of additional training and/or a failure to debrief Corrections Officers and staff following this suicide is not just an assertion made by Plaintiffs', but rather directly supported by the deposition testimony of Correction Officers Cimino and Gomez who testified during their depositions to not being debriefed following any of the suicides and/or receiving any additional training following any of the suicides. ***See Exhibit S 34:15-25, 35:1-2, 37:25, 38 1-5, Attached to the Cumberland County Defendants' Statement of Material Facts***. ***See Exhibit T 36:14-25, 37:1, Attached to the Cumberland County Defendants' Statement of Material Facts***.

This pattern of failing to conduct checks and falsifying records continues in the Estate of Megan Moore, where Corrections Officer Tabatha Roman, is currently indicted in connection with

7

the suicide death of Megan Moore at the CCDOC. In that indictment Corrections Officer Tabatha Roman is charged with failing to conduct the required checks and falsifying the close watch records to reflect that said checks were completed. ***See Exhibit E, Attached to Plaintiffs' Opposition to Defendants' Statement of Material Facts.*** This indictment is based on security footage from the CCDOC compared against the close watch forms Officer Roman was responsible for filling out. As with the Estate of Alissa Allen, Decedent Megan Moore was provided the opportunity to commit suicide during the time period where Officer Roman failed to make her checks. Once again, following Megan Moore's suicide, the County, CCDOC and/or the Warden took no steps to debrief the CCDOC staff regarding the suicide death, nor was an example made of the actions or inactions taken by Officer Roman. No training was offered to the CCDOC staff to again stress the importance of cell checks, nor were any changes made to the policies and procedures governing cell checks. ***See Exhibit S 34:15-25, 35:1-2, 37:25, 38 1-5, Attached to the Cumberland County Defendants' Statement of Material Facts***. ***See Exhibit T 36:14-25, 37:1, Attached to the Cumberland County Defendants' Statement of Material Facts***. Furthermore, there is no evidence that Defendants can point to that demonstrates any efforts on their part to thoroughly investigate the occurrences of the multiple suicides.

      That brings the Court to the next piece of the pattern of indifference, the <u>Estate of David Conroy</u>, where the Cumberland County Prosecutor had evidence to indict in this case not one, but two Corrections Officers for failing to conduct their required cell checks and falsifying records. ***See Exhibit A, Attached to the County Defendants' Statement of Material Facts.*** Only after being confronted by the sixth lawsuit relating to David Conroy's death did the CCDOC possibly attempt to investigate itself and do something instead of continuing its culture of ignoring the safety of its inmates.

In Defense counsel's Motion for Summary Judgement she ignores the pattern of neglect and indifference and argues that unless the Court finds the individual Corrections Officers, Justin Cimino and Nicholas Gomez liable, that no independent municipal liability can attach to Cumberland County.  However, Defense counsel, cites to case law that holds just the opposite.  In Simmons v. City of Philadelphia, 947 F.2d 1042 (3rd Cir. 1991) cert. denied, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992), Chief Judge Sloviter, concurring in the opinion stated that "the jury verdict can be upheld on the basis of the City's liability independent of Panati's culpability."  Id. at 1089 n.1.  Then in Fagan v. City of Vineland, 22 F.3d 1283, 1294 (3rd Cir. 1994), as cited above, the Third Circuit reaffirmed the proposition that there can be independent municipal liability under section 1983, holding "that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution."

Here, Plaintiffs' assert that Cumberland County had actual or constructive knowledge of the constitutional violations occurring at the CCDOC, specifically the fact that Corrections Officers repeatedly failed to safeguard the inmates by failing to conduct cell checks and then falsifying records to reflect that said checks were done; and that the County failed to carry out its duty to oversee their actions, hold them accountable and discipline them.  See O'Quinn v. Manuel, 773 F.2d 605, 608-09 (5th Cir. 1985) (citing Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir.1984) (en banc)).  Instead of recognizing that the Corrections Officers clearly needed additional training regarding cell checks and further that Corrections Officers needed to be held accountable when those checks were not made but rather falsely entered; the County instead turned a blind eye to their horrid pattern and practice.

This lack of additional training and oversight or supervision is supported by the deposition testimony of Corrections Officer Justin Cimino who testified during his deposition that he never sat down with any supervisor or trainer to review policy. *See Exhibit S 40:17-19, Attached to the Cumberland County Defendants' Statement of Material Facts*. Corrections Officer Gomez further testified during his deposition that he did not have any supplemental training regarding suicide prevention after his academy training and initial classroom training. *See Exhibit T 19:13-16, Attached to the Cumberland County Defendants' Statement of Material Facts*. When asked what he was taught regarding cell checks, Corrections Officer Gomez testified that, "I mean, we were always told to like be vigilant or whatever the case may be, but I was never told specifically look for this, that, or the other." *See Exhibit T 19:25, 20:1-4, Attached to the Cumberland County Defendants' Statement of Material Facts*. When asked what instruction he received regarding the Close Watch Forms, he replied, "Other than just keep it up to date, not really." *See Exhibit T 23:15-17, Attached to the Cumberland County Defendants' Statement of Material Facts*. Finally, when asked by counsel, "Was there ever any discussion with any of the supervisors regarding what should I do with regard to the Close Watch Form if I'm unable to make the check? What were you told?" Officer Gomez stated, that "They would just say fill it out. If I asked anything regarding on how to fill out something properly, my response, they would just say just keep it up or handle it." *See Exhibit T 50:6-19, Attached to the Cumberland County Defendants' Statement of Material Facts*.

This testimony regarding cell checks/close watch forms by Corrections Officer Gomez is yet another demonstration of the County turning a blind eye and simply not caring about the safety of its inmates. Rather than provide guidance and instruction the officers were told "caught up or wrote up" as testified to by PBA Union President Victor Bermudez during his deposition. Officer

Bermudez testified when asked about the firing of Correction Officers Cimino and Gomez, "you know, they only did as they were told and trained and, unfortunately, they wrote in the books as they were trained because they're told to either ***have the book caught up or you're going to get, we say in jail, you know, caught up or wrote up***. So they caught the books up and it was considered perjury and now they're gone." [Emphasis added] ***See Exhibit D 67:25, 68:1-10 Deposition of Victor Bermudez***, ***Attached to Plaintiffs' Opposition to Defendants' Statement of Material Facts.*** Officer Bermudez's testimony regarding this policy is further supported by the testimony of Corrections Officer Cimino when asked during his deposition, if there was a saying at the jail caught up or wrote up, "Yes." When counsel then asked what that meant to him, Cimino responded, "It means if the book[s] aren't caught up, you're going to get an earful. Q. So what is it -- what should you do then as an officer? A. Make sure the books are filled out. Q. Whether you did something or not. A. Yes. Q. And is that, in fact, what you did? A. Yes." ***See Exhibit S 12:2-15, Attached to the Cumberland County Defendants' Statement of Material Facts***.

      This testimony regarding cell checks and filling out logbooks/close watch forms is further supported by the fact that CCDOC Supervisors never took the time to conduct actual checks, by comparing the logbooks/close watch forms to the security footage, to ensure that the Corrections Officers were in fact performing the required checks. ***See Exhibit V 32:13-17, Attached to the Cumberland County Defendants' Statement of Material Facts***, Wherein Sergeant Mendibles was asked during his deposition if he had reviewed the suicide watch log and compared it to the video? His response was, "no." Further, Lieutenant Martinez was asked during his deposition if he ever found any officers putting false entries in their logbooks. His response was, "no." When asked how he would check for that? He indicated, "I really can't. My checking was for accuracy of the time, ***that the book is caught up*** to the time frame that it's supposed to be." [Emphasis added] ***See***

***Exhibit U 17:4-10, Attached to the Cumberland County Defendants' Statement of Material Facts***. From their own testimony, CCDOC Supervisors merely looked at the logbooks/close watch forms to see that the entries were caught up and carelessly accepted that the entries were accurate and true. This cannot be justified given the number and pattern of suicides that were occurring at the CCDOC when cell checks were not performed, and logbooks/close watch forms were falsified. This lack of accountability by the Supervisors at the CCDOC further contributed to the pattern of suicides and culture of indifference towards inmates by Officers and staff in the jail; knowing there would be no discipline or firing for their dereliction of duty.

Warden Smith was also aware of this pattern among the corrections officers, failing to do required cell checks and falsifying records. When asked during his deposition, Warden Smith, acknowledged that CCDOC Corrections Officers had been criminally prosecuted in connection with the deaths of inmates Megan Moore, David Conroy and Gregory Kubiak. However, when asked if anybody had been criminally prosecuted for falsifying records when a suicide was not involved, Warden Smith replied, "Not to my knowledge, no." ***See Exhibit G 18:18-25, Attached to the Cumberland County Defendants' Statement of Material Facts***. This is yet another example of the County turning a blind eye, because when asked during his deposition if he thought there was a problem in the jail with officers not accurately recording cell checks, Warden Smith answered, "From the very beginning. From when I sat and met with my supervisory staff and I talked to them about the thing I wanted to implement, there were conversations about officers not making their check[s], which was a big part of some of the issues that we experienced with the suicides." ***See Exhibit G 32:14-21, Attached to the Cumberland County Defendants' Statement of Material Facts***. This clearly must be regarded as some knowledge that the jail was infected by

a culture of indifference towards the inmates it was obligated to keep safe and that it was in his mind proximately related to the suicides.

Unfortunately, acknowledging this fact during a deposition after the tragedies of the suicides is not enough. The County had an obligation to keep its inmates and in this instant matter, David Conroy safe and secure while he was housed at the CCODC. This pattern of corrections officers not performing checks, and falsifying records is prevalent and continues to occur at the CCDOC, because the Supervisors at the CCDOC do not take the time to actually compare the logbooks/close watch forms to the video surveillance to ensure that the checks are properly being performed and recorded. The Supervisors are merely pushing the ball forward by simply looking to see that the books are caught up. The Corrections Officers knew that no one was checking on them and further that no one was going to be held accountable for their actions until the Prosecutor's Office got involved; so this pattern of behavior and inmate suicides continues to occur.

This pattern and the fact that the County turned a blind eye to it, is an issue of material fact that supports Plaintiffs' Monell Claim against the County. The Court cannot turn a blind eye to this pattern, as did Cumberland County, and grant Summary Judgment in this matter. This pattern is a genuine issue of material fact, that warrants this matter proceeding forward to a jury for a determination of liability and accountability for justice.

**B.     Plaintiffs' Claims Against Warden Richard Smith Under 42 U.S.C. §1983 should not be dismissed.**

Plaintiffs' claims against Warden Smith should not be dismissed in this matter. The Warden was aware of the pattern of suicides occurring at the CCDOC from the day he took command and did nothing effective to combat this issue. Smith was in a unique position to combat the suicide problem at the CCDOC as he began his tenure at the CCDOC under Warden Balicki

as a Confidential Assistant to the Warden. During this time Warden Smith had discussions with Former Warden Balicki about the suicide problem at the CCDOC and had witnessed the problems firsthand. This is evident from the fact that upon taking over as Warden, Smith acknowledged during his deposition that he was aware that "officers not making their check[s], was a big part of some of the issues that we experienced with the suicides." ***See Exhibit G 32:14-21, Attached to the Cumberland County Defendants' Statement of Material Facts***. Unfortunately, despite this knowledge, Warden Smith took minimal action to combat the problem until after another two suicides had occurred within a 3-month period of his tenure. According to Plaintiffs expert, Jeffrey Schwartz, Ph.D., Warden Smith's lack of action was a direct cause of Mr. Conroy's suicide. In his expert report Dr. Schwartz states,

> In addition to the officers who knew they were required to conduct cell checks but did not do so, the two individuals responsible for the cluster of suicides at CCJ are the Warden, Richard Smith, and the prior Warden, Robert Balicki. Generally, officers will conduct cell checks because they have received suicide prevention training that has emphasized the life and death importance of such checks and because they know that supervisors intermittently review the cell check logs against security camera footage to verify that cell checks are being conducted appropriately and timely. Neither of those things happened at CCJ. Preventable suicides were the predictable result.

***See Exhibit F, Attached to Plaintiffs' Opposition to Defendants' Statement of Material Facts.***
As Warden, it was Smith's duty and responsibility to protect the inmates charged to his care at the CCDOC. The fact that he was aware that his officers were not doing their checks and further acknowledged that this was a problem related to the suicides, by his own admission, but then did nothing meaningful to combat the problem until another two suicides occurred is unacceptable. While Plaintiffs' acknowledge the Defendants profess that following Mr. Conroy's death there was finally a change made to the suicide policy, that change, whatever it may have been, however, was too late to save David Conroy. The Court should not grant Summary Judgment to Warden

Smith, rather this matter should be allowed to proceed forward to a jury for a decision on the merits.

### C. Plaintiffs' Federal Claims Should Not be Dismissed Based Upon Qualified Immunity

In assessing whether qualified immunity applies, courts are to consider: (1) whether the facts as alleged, when viewed in the light most favorable to the party asserting the injury, show that the state official's conduct violated a constitutional right, and (2) whether the right that was allegedly violated was clearly established. Saucier v. Katz, 533 U.S. 194, 201-202 (2001).

Here, there is no question that Cumberland County and Warden Richard Smith through their actions and inactions violated decedent, David Conroy's 8th and 14th Amendments rights and that these rights are clearly established. Again as held in City of Canton v. Harris, 489 U.S. 378 (1989), a municipality may be held liable under §1983 for violations of rights guaranteed by the Federal Constitution, which violations result from the municipality's failure to adequately train its employees, only if that failure reflects a deliberate indifference on the part of the municipality to the constitutional rights of its inhabitants. Here, Cumberland County through the actions and inactions of Former Warden Robert Balicki and inherited by current Warden Richard Smith, the CCDOC had a policy or custom of failing to train, supervise and/or discipline its corrections officers for failure to conduct cell checks and falsifying records as more fully described above. As a direct result of this policy or custom, David Conroy, as well as five other inmates in a three-year period committed suicide as they were not properly supervised due to lack of training and discipline. Based on the above, Plaintiffs' have established that the Defendants violated a constitutional right that was clearly established and therefore respectfully submit that qualified immunity does not apply in this matter.

## II. PLAINTIFFS' NJCRA CLAIMS SHOULD NOT BE DISMISSED

As argued above, Plaintiffs' contend that summary judgment is not appropriate on the federal constitutional claims brought under 42 U.S.C. §1983. Issues of material fact exist as to whether Cumberland County and Warden Richard Smith acted with deliberate indifference towards the supervision of decedent, David Conroy. As the New Jersey Civil Rights Act ("NJCRA") was modeled after 42 U.S.C. §1983, and this Court has repeatedly interpreted the NJCRA analogously to §1983, for the reasons articulated above summary judgement of Plaintiffs' state law civil rights claims is also not appropriate. See Trafton v. City of Woodbury, 2011 WL 2610747 *16-17 (D. N.J. 2011).

## III. CLAIMS AGAINST UNKNOWN CORRECTIONS OFFICERS

Plaintiffs' do not dispute that the claims brought against the unknown corrections officers should be dismissed at this juncture. As discovery is closed in this matter, Plaintiffs will not be moving to amend their complaint to name any additional Defendants.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully submit that Defendants, Cumberland County and Warden Richard Smith's motion for Summary Judgment should be denied. There are genuine issues of material fact present in this matter; namely the fact that the County was aware of the pattern of Corrections Officers routinely failing to safeguard the inmates of the Cumberland County Jail by failing to conduct cell checks and then falsifying records; and that the County failed to carry out its duty to put an end to this dereliction of duty. It is for these reasons that the Court

must deny Defendants Motion for Summary Judgment and allow this matter to proceed to a jury for a determination of liability and accountability in this matter.

LAW OFFICES OF CONRAD J. BENEDETTO

By: *s/Conrad J. Benedetto* .
Conrad J. Benedetto, Esquire
Attorney for Plaintiffs

Dated: July 6, 2020